## IRVING AIR CHUTE CO., Inc., v. SWITLIK PARACHUTE & EQUIPMENT CO.

### No. 5551.

Circuit Court of Appeals, Third Circuit.

July 11, 1935.

Charles Neave, of New York City (Alexander C. Neave, of New York City, Roy R. Rommel, of Washington, D. C., and Charles H. Walker, of New York City, of counsel), for appellant.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (Daniel L. Morris, of New York City, of counsel), for defendant.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge. .

This is an appeal from a decree of the District Court for the district of New Jersey. The appellant, the owner of Adams patent, No. 1,780,104, filed a bill of complaint in which it alleged infringement of the patent by the appellee. The District Court held the patent invalid for want of invention and, if valid, so limited in scope as not to be infringed by the appellee's device.

The patent in suit relates to parachutes and parachute packs, with particular reference to the storage of the shroud lines so as to avoid their entanglement when stored within the pack as well as when withdrawn from the pack. Provision is made for the bunching of the shroud lines and their storage in a series of pockets in the pack. By grouping the lines together and fold-

ing them back upon themselves so that they are looped, compact storage is achieved. Entanglement while in the pack is prevented by having the bunched lines securely held in the pockets. Entanglement after the opening of the pack is prevented by having them systematically arranged so that they do not fall out of the pack in a mass but remain in their pockets until each bight of the group lines is successively pulled out of its own pocket by the tension of the canopy. The same footage of each shroud line is released at the same time because of the fact that all of the lines are bunched together in loops. The use of a number of pockets permits ready release.

Nos. 2, 42, 60, 75, and 80, which are typical of the 16 claims of the patent relied upon by the appellant, read:

"2. The combination with a parachute of a means for keeping separate the lines connected to the parachute comprising separate pockets in which loops of the connecting lines are placed, a flap to cover lines exposed at said pockets, means for holding said flap in place over the pockets, and means for quick release of said flap when said parachute is to be used. * * *"

"42. In a parachute pack a container, a parachute packed therein having shroud lines, and spaced pockets in said container having the shroud lines bunched together and laid back and forth and held in zig-zag position in said pockets. * * *"

"60. In a parachute pack, a parachute and a container therefor comprising a back portion and a flexible closure portion adapted to releasably enclose said parachute, shroud lines for said parachute, said lines being arranged on said back portion in transverse looped bundle lying in substantially the same plane on said back portion, means for releasably retaining said loops on said back portion, said parachute being folded back and forth in transverse layers with the peak end adjacent said flexible closure portion, means for releasably retaining said flexible closure portion, and means to assist said parachute to issue peak first upon release of said retaining means. * * *"

"75. In parachute apparatus, a container, a parachute packed in the container, shroud lines attached to the parachute and bunched in parallel relation and folded zig-zag in side by side lengths in the container in a plane transverse to the line at which the parachute issues from the con-

tainer, and means to open the container to permit the parachute and shroud lines to exit therefrom. * * *"

"80. The combination with a parachute and its shroud lines, of means for keeping the shroud lines packed in an orderly arrangement consisting of a series of adjacently-disposed loops with said lines folded zig-zag and removably held with their bight end portions within said loops to facilitate release of the parachute."

Adams filed his application on October 1, 1917, when the art was in its early stages. Had the above claims been set forth in the application, there might have been much merit to the appellant's claim of novelty. It was not until October 28, 1930, however, that the patent issued. In the thirteen years which elapsed while Adams was negotiating with the Patent Office, the art had advanced far beyond the stage at which he found it at the time of his original application. We think the situation is one in which the principle enunciated in Chicago & N. W. Railway Co. v. Sayles, 97 U. S. 554, 563, 24 L. Ed. 1053, is applicable. The Supreme Court there said: "Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has, in the meantime, gone into public use."

We guided our decision in Hestonville, M. & F. Pass. Ry. Co. v. McDuffee, 185 F. 798, by this principle. In the instant case, Adams had ample opportunity to avail himself of disclosures made by such inventors in the art as Ball, Irvin, Smith, Russell, and Sperry. The natural limitations of an opinion prevent a detailed comparison of the 30 claims contained in the original application with the 80 claims contained in the patent finally issued by the Patent Office. The file wrapper, however, contains conclusive evidence that Adams utilized, not only the language of the patents issued subsequent to his application, but also the disclosures made in such patents. We are in full accord with the District Court's conclusions that the patent in suit was invalid for want of invention and, if valid, so limited in scope as not to be infringed by the appellee.

The decree of the court below is affirmed.